# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3577 | **DATE** | 9/30/2002 |
| **CASE TITLE** | Walls vs. Turano Baking Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting defendant's motion for summary judgment as to the harassment claim and denying it as to the discrimination and retaliation claims. Defendant's motions to strike (23) is denied. Pretrial order is due 10/18/02; and response to any motions in limine by 11/1/02. Pretrial conference set for 11/5/02 is reset for 11/20/02 at 4:00 p.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | OCT 01 2002 date docketed | 37 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | G·Y. docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 9/30/2002 date mailed notice | |
| MPJ courtroom deputy's initials | | MPJ mailing deputy initials | |
| Date/time received in central Clerk's Office | | | |

| | |
|---|---|
| KEVIN WALLS, ) | DOCKETED |
| Plaintiff, ) | OCT 0 1 2002 |
| v. ) | |
| TURANO BAKING COMPANY, ) | No. 01 C 3577 |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kevin Walls sued his employer, defendant Turano Baking Company ("Turano"), for harassment, discrimination, and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*, and Section 1981, 42 U.S.C. § 1981. Turano now moves for summary judgment. I grant the motion in part and deny the motion in part.

I.

Walls was hired by Turano as a route salesman in August 1996. In March or April of 2000, Glenn Hurt became Walls' immediate supervisor. Walls states that he was subject to harassment at Turano because he is African-American. He claims that Hurt used racial slurs and was abusive to him, and that coworkers used racial slurs in his presence. He discussed the situation with superiors in June of 2000, and filed a formal charge with the EEOC in July of 2000. Following his complaints to supervisors, Walls was suspended

for three days and had his route restructured which resulted in loss of commissions.

In January of 2001, Walls was terminated following a dispute about whether Walls had contacted the proper people at Turano regarding his inability to complete a delivery route. Turano states that this was not the first time that Walls had improperly notified it when he could not complete a route. Walls disputes the facts surrounding the January incident as well as one of the earlier incidents. He claims that his termination was discriminatory and in retaliation for his earlier complaints. He filed a second charge with the EEOC that month. After obtaining two right to sue letters (one in February 2001, the second in April 2001), Walls initiated this action.

II.

As a preliminary matter, Turano argues (in its statement of facts as opposed to its memorandum of law) that I have no jurisdiction over various of Walls' allegations because they were not set out in Walls' EEOC complaints or because they were not timely filed. Under Title VII, a plaintiff has ninety days after receiving a right to sue letter in which to file a civil complaint. 42 U.S.C. § 2000e-5(f)(1) (1994). Here, Walls' original complaint was filed on May 15, 2001, ninety days after the date on his first right to sue letter. The allegations in his amended complaint

relate back to the date of his original complaint, Fed. R. Civ. P. 15(c)(2), and I thus find that his complaint was timely filed.

The scope of a civil complaint is limited by the scope of the EEOC charge that precedes it. *See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985). This is not an issue of subject matter jurisdiction, however, but is more in the nature of a condition precedent. *See id.* Title VII claims are cognizable to the extent that they are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)). EEOC charges should be interpreted liberally in order to effectuate the remedial purposes of Title VII. *See Babrocky*, 773 F.2d at 864. Here, Walls' EEOC charges outline generally his claims of harassment, retaliation and discrimination. While an employee may not complain to the EEOC of only certain instances of prohibited conduct and then seek judicial relief for different instances, *Rush v. McDonald's Corporation*, 966 F.2d 1104, 1110 (7th Cir. 1992), the purpose of this limitation is based on the principles of primary jurisdiction in the EEOC and notice to employers regarding conduct about which the plaintiff is aggrieved. *See id.* Reading Walls' EEOC complaints liberally and with an eye towards the purposes of the limitation, I find Walls' claims here "reasonably related" to his EEOC charges. Because Walls' claims are related to his EEOC

3

charges and his suit was timely filed, he has met the prerequisites to filing a civil suit under Title VII.

### III.

I may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While I apply this standard with particular care in employment discrimination cases, *Adusumilli v. City of Chicago,* 164 F.3d 353, 360-61 (7th Cir. 1998), the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Here, Walls bases his claims on Title VII, and Section 1981. Because the same standards governing liability under Title VII apply to Section 1981, *Gonzalez v. Ingersoll Milling Machine Co.,* 133 F.3d 1025, 1035 (7th Cir. 1998), I will analyze the claims solely under Title VII.

#### A. Harassment/Hostile Work Environment

In order for plaintiff to recover on a theory of hostile work environment, he must show that: (1) he was subject to unwelcome harassment, (2) the harassment was based on race, (3) the harassment was so severe or pervasive as to alter the conditions of the employee's environment and create a hostile or abusive working environment, and (4) there is a basis for employer liability.

4

*Mason v. Southern Illi. Univ. at Carbondale,* 233 F.3d 1036, 1043 (7th Cir. 2000).[1]

Here, Walls makes several allegations of harassment. He cites an incident in which Hurt told Walls that he was lazy (Pl.'s Statement of Facts ¶ 33), Hurt was "tired of his shit" and no longer wished to ride with him (¶ 31); an incident in which Hurt referred to Walls as "nigger" (¶ 32); an incident in which Hurt used racial epithets in an altercation with another employee (¶ 33); use by coworkers of racial slurs directed at African-Americans and other minorities (¶ 37); and a meeting in which Hurt "lashed out" at Walls using "a lot" of profanity (¶ 38). Because Walls alleges conduct of both supervisors and coworkers, I consider the totality of the circumstances in determining whether a hostile work environment existed. *See Mason,* 233 F.3d at 1044-45.

The incident in which Hurt referred to Walls as "nigger" occurred when Hurt was in a cubicle with someone else and said something to the effect of "Kevin just got back, and already that nigger is messing up the route." (Walls Dep. 113-15.) Walls was standing about three feet from the cubicle. Turano argues that a

---

[1] *Mason* states the third prong of the test to require "severe *and* pervasive" harassment (emphasis added). However, the requirement is "severe *or* pervasive" harassment, *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 754 (1998) (emphasis added), a distinction that is dispositive neither here nor in *Mason. See also Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 808 (7th Cir. 2000) ("Harassment need not be severe *and* pervasive to impose liability; one or the other will do.") (original emphasis).

5

single reference to Walls as "nigger" is insufficient to support a hostile environment claim. In support of this proposition, it cites *Sanders v. Village of Dixmoor,* 178 F.3d 869 (7th Cir. 1999). Even if Walls' only allegation of harassment were Hurt's single use of the word "nigger," *Sanders* does not stand for the proposition that a single invocation of a racial slur cannot support a hostile environment claim. In *Sanders,* the court of appeals did not address Sanders' claim of hostile workplace, and dismissed his appeal on procedural grounds.[2] To the contrary, there is no "'magic' threshold number of incidents" that must be alleged to prove the existence of a hostile work environment. *Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1273-74 (7th Cir. 1991). The Seventh Circuit "ha[s] repeatedly recognized that even one act of harassment will suffice if it is egregious." *Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 808 (7th Cir. 2000). Further,

---

[2] In *Sanders,* an African-American plaintiff alleged in a two-page complaint an incident in which his supervisor had suspended him, shouting "Nigger, you're suspended." The district court granted summary judgment for defendant, finding that this evidence did not support a claim of hostile work environment, but failing to address whether it could support a claim of discrimination. One appellate judge called the decision to characterize plaintiff's claim as one only of harassment "baffling," especially considering the fact that defendant had treated plaintiff's claim as one of discrimination. *Sanders,* 178 F.3d at 871-72 (Evans, J., dissenting). On appeal, plaintiff argued only that he had presented sufficient evidence of discrimination, an argument the court of appeals found he had waived. The court of appeals thus affirmed the granting of summary judgment without addressing the issue of whether plaintiff's evidence supported a claim of hostile environment. *See id.* at 870-71.

"[p]erhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) (internal citations omitted).

Despite this, Walls does not sufficiently allege an actionable hostile environment. Walls states that Hurt used the word "nigger" to refer to Walls in a conversation with a third-party that was overheard by Walls. He also alleges that Hurt used non-racial abusive language. Coarse language need not be explicitly racial in order to create a hostile environment; it "must have either a... racial character *or purpose* to support a Title VII claim." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345-46 (7th Cir. 1999) (original emphasis). However, even considering Hurt's non-racial abusive language in conjunction with his use of the racial slur, Walls' claim falls short of those cases in which isolated instances of harassment created a hostile environment. *Cf. Tutman v. WBBM-TV/CBS Inc.*, 54 F. Supp. 2d 817, 825 (N.D. Ill. 1999) (Bucklo, J. adopting report and recommendation of Denlow, Mag.) (isolated incident in which supervisor called employee "nigger" accompanied by threat to kill employee); *Smith v. Sheahan,* 189 F.3d 529, 534 (7th Cir. 1999) (single incident of physical assault requiring surgery).

7

The allegation that Hurt used racial epithets in a confrontation with another employee does not help Walls' hostile environment claim. Here, Walls alleges that Michael Carbone, another manager, told Walls that Hurt had used racial epithets on a previous occasion. Isolated comments made by a supervisor to employees other than plaintiff and outside of plaintiff's presence, while offensive, are not actionable as harassment under Title VII. *See Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998).

Walls' allegations of coworker slurs likewise do not add enough to create a hostile environment. With the exception of one comment (a joke that Walls was the Jackie Robinson of the bakery), none of his coworkers' comments were directed at him. Walls alleges that his coworkers referred to black neighborhoods as "ghettos," and used such terms as "nigger," "sand-nigger," "dot-head," and "porch monkey." Walls gives no indication as to how often and in what circumstances such comments were made. Because occasional use of racial epithets by coworkers not motivated by racial animus does not create a hostile environment, *see McPhaul v. Bd. of Comm'rs*, 226 F.3d 558, 567 (7th Cir. 2000) (finding no hostile environment where coworker used the word "nigger" on a weekly basis because of her own immaturity and insensitivity, not racial animus), Walls undetailed claims of coworker slurs are insufficient to allege a hostile environment.

Considering all the allegations of harassment presented by Walls, I find that the harassment alleged was not so severe or pervasive as to create a hostile or abusive working environment. As a result, I need not consider whether there exists a basis for Turano's liability on the issue. Because I find no genuine issue of material fact with respect to the existence of a hostile environment, I grant summary judgment on the harassment claim.

B. Retaliation and Discrimination

The standards for establishing a case of retaliation or discrimination are essentially identical. In both cases, the plaintiff can either present direct evidence of retaliation or discrimination, or can proceed using the *McDonnell Douglas* burden-shifting analysis. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (retaliation); *Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995) (discrimination). Under the burden-shifting analysis, a plaintiff must make a prima facie case by showing that: (1) he is a member of a protected class (discrimination) or engaged in statutorily protected activity (retaliation), (2) he was meeting his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees who were not members of the protected class or engaged in protected activity were treated more favorably. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002) (discrimination); *Hilt-Dyson v. City of Chicago*, 282 F.3d

456, 465 (7th Cir. 2002) (retaliation). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a noninvidious reason for the adverse action. *Wells,* 289 F.3d at 1006; *Hilt-Dyson,* 282 F.3d at 465. If the defendant proffers a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Wells,* 289 F.3d at 1006; *Hilt-Dyson,* 282 F.3d at 465.

Walls is African-American, so he is a member of a protected class under Title VII, and he complained to superiors about the racial slurs and other harassment in June of 2000 (Pl.'s Statement of Facts ¶ 38) and filed a formal complaint with the EEOC in July of 2000. Both informal complaints to supervisors and formal charges with the EEOC constitute statutorily protected expression. *Ozturk v. Motorola, Inc.,* No. 97 C 2130, 1998 WL 182515, at *10 (N.D. Ill. Apr. 16, 1998) (Gettleman, J.). The fact that I find that the harassment complained of by Walls does not rise to the level of a Title VII violation does not mean that his complaints to superiors and the EEOC were not protected activity. *See Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1457-58 (7th Cir. 1994). Walls had a reasonable belief that the harassment complained of violated Title VII and his allegations were not "utterly baseless." *Id.* at 1458. Walls therefore makes the first element of his prima facie case.

Additionally, I find that Walls has presented sufficient evidence to establish the third element of his prima facie cases, that he suffered an adverse employment action. "An adverse employment action is one that is materially adverse, meaning more than a mere inconvenience or an alteration of job responsibilities." *Hilt-Dyson,* 282 F.3d at 465 (internal quotation omitted). Whether an action is materially adverse is decided on a case-by-case basis, but generally includes things like termination and material loss of benefits. *See id.* at 465-66. Here, Walls was suspended for three days, was subject to a route restructuring that resulted in loss of commissions, and was terminated. These are all materially adverse employment actions.

The second element of the prima facie case, whether an employee was meeting his employer's legitimate employment expectations, becomes muddy when the reason proferred by the employer for the adverse employment action is performance-based. In such a case, if the employee has produced evidence sufficient to raise an inference that the employer was applying its expectations differently to similarly situated employees, the second and fourth elements of the required prima facie showing merge, allowing plaintiff to establish his prima facie case and proceed to the pretext inquiry. *Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 329 (7th Cir. 2002). The reasons proffered by Turano for the suspension and termination were performance-based. (Def.'s

Statement of Facts ¶¶ 56-57, 144-47.) The reason proffered for the route restructuring was not performance-based: Turano offers that Walls' route was restructured in order to better serve customers. (Def.'s Statement of Facts ¶¶ 34-38.) However, it is impossible to evaluate whether Walls was meeting Turano's expectations because of the performance issues relating to the suspension and termination. Thus, I turn to the fourth required element of the prima facie case.

With respect to the suspension and the route restructuring, Walls fails to name any similarly situated employees who were treated more favorably. Although Walls makes general allegations that he was treated differently from other employees in these situations, the failure to name specific employees means that Walls cannot establish the fourth element of his prima facie case with respect to these claims. *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir. 2001).

With respect to the termination, Walls points to Tanner Aksu, Mike Stelmar,[3] and Wayne Gorski, two other route salesmen and a driver. Aksu was given a situation report by Hurt for failing to complete a delivery, Stelmar was given a situation report by Hurt after calling in sick because he had no routebook and his keys were

---

[3] Walls refers in his filings to an employee named Mike Stalemate, while Turano refers to an employee named Mike Stelmar. The parties appear to be referring to the same person, whose name is Mike Stelmar. See Hurt Dep. Exhibit #13.

12

not tagged, and Gorski was given a situation report by Hurt for insubordination and walking off the job. None were terminated. Walls, on the other hand, was terminated for allegedly failing to contact Hurt when he was unable to complete a route on January 23, 2001. Turano argues that Aksu, Stelmar, and Gorski were not similarly situated to Walls because Walls was terminated after his third warning, while the other three had only a single offense each. Walls, however, disputes the facts surrounding two of his three incidents (Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 96, 120). If Turano enforced policy rules against Walls more strictly than against other employees, or if Hurt is lying about Walls' performance and not those of other employees, an inference is raised that Turano is applying its employment expectations in a disparate manner. Under *Peele*, this merges the second and fourth elements of *McDonnell Douglas*, allowing Walls to establish his prima facie case. *Peele*, 288 F.3d at 329.

The burden then shifts to the employer to offer a legitimate, noninvidious reason for the adverse employment action. *Wells*, 289 F.3d at 1006; *Hilt-Dyson*, 282 F.3d at 465. Turano says that Walls failed to contact Hurt on January 23 when he could not complete his route, and that this was the third time that Walls had failed to contact his immediate supervisor when he could not come to work or complete his route. (Def.'s Statement of Facts ¶¶ 144-47.) This is a legitimate, noninvidious reason for termination, and the

13

burden thus shifts back to Walls to show that this reason is pretextual. *Wells,* 289 F.3d at 1006; *Hilt-Dyson,* 282 F.3d at 465.

Here, the decision to fire Walls was ultimately made by Lisa Turano, the bakery's general counsel. Her decision was based on the information given to her by Sam Blasi, a human resources manager, that Walls had failed to contact Hurt on January 23 and prior occasions when he could not finish his route. (Turano Aff. ¶¶ 36-37). Walls disputes the failure to contact Hurt on both the January 23 and December 13 incidents (Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 120, 96), and further argues that the policy regarding whom he should contact and how was unclear (Walls Dep. 35-38; Pl.'s Statement of Facts ¶¶ 118-124) and that he had been told numerous times that he could always call or page Blasi if he could not contact his immediate supervisor (Pl.'s Statement of Facts ¶ 127). Ambiguity surrounding an employer's attendance policy and a dispute regarding an employee contacting his employer regarding an absence present a genuine issue of material fact as to pretext sufficient to defeat an employer's motion for summary judgment. *See Johnson v. Federal Express Corp.,* No. 00 C 3274, 2001 WL 725400, at *8 (N.D. Ill. June 27, 2001) (Holderman, J.).

Additionally, aside from using a *McDonnell Douglas* burden-shifting approach, Walls presents sufficient direct evidence of retaliation (though not discrimination) to defeat summary judgment.

14

Under this approach, Walls must present direct or circumstantial evidence that he was subject to an adverse employment action because of his protected status. *Stone*, 281 F.3d at 644. As discussed above, Walls engaged in statutorily protected activity and was subsequently suspended, had his route restructured, and was ultimately terminated. If Walls can present sufficient evidence of causation (i.e. that he was suspended, rerouted, or terminated *because of* his complaints), he can defeat summary judgment under this direct approach.

Walls presents evidence of Hurt's retaliatory intent by pointing to Hurt's statement that he launched a retroactive disciplinary investigation into Walls after a meeting in which Walls complained to superiors about Hurt's harassment (Hurt Dep. 273, 288-89) ("Q: [P]art of the reason you prepared this particular situation report was based upon what Mr. Walls brought up during the June 5th meeting? A: Yes... Q: [B]ased on some of the things that [Walls] had said in the June 5 meeting, you went back and checked out his... gassing-up time? A: Yes"). In addition to Walls' harassment claims, various performance issues were discussed at this meeting. It may be that Hurt's retroactive investigation into Walls was launched solely because of these performance issues. However, when deciding a motion for summary judgment, "the non-movant is entitled to the benefit of every reasonable inference that the record permits." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d

15

881, 893-94 (7th Cir. 1996). Reading Hurt's deposition in the light most favorable to Walls, I find it reasonable to infer that Hurt intended to retaliate against Walls for his complaints.

The crucial issue here is the role played by Hurt in Walls' adverse employment actions. Walls claims that Hurt lied about two incidents in which Walls could not complete his route. Walls alleges no discriminatory or retaliatory intent on the part of any other management at Turano. The only way in which Hurt's retaliatory intent can be imputed to a non-retaliating decisionmaker is if Hurt was the "real" cause of the adverse employment action. *See Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997).

As noted, the decision to terminate Walls was ultimately made by Lisa Turano based on information from Blasi. Blasi was told by Hurt that Walls had not contacted him on January 23. (Def.'s Statement of Facts ¶ 119). This contradicts Walls' claim that he did contact Walls. (Pl.'s Resp. to Def.'s Statement of Facts ¶ 119). If Hurt concealed relevant information from Blasi and Lisa Turano, or fed them false information, his retaliatory intent can be imputed to them. *See Wallace,* 103 F.3d at 1400. Walls presents a genuine issue as to whether Hurt had retaliatory intent, and whether he lied about whether Walls had contacted him on January 23. This is enough to defeat summary judgment. *See Berchiolly v. United Beechcraft, Inc.,* No. 96 C 50252, 1998 WL 803418, at *6

(N.D. Ill. Nov. 10, 1998) (Reinhard, J.) (denying employer's motion for summary judgment because discriminatory intent of employee's immediate supervisor could be imputed to nondiscriminatory decisionmaker where supervisor and employee gave conflicting accounts of the incident leading to termination).

IV.

Turano's motion for summary judgment is GRANTED with respect to the harassment claim and DENIED with respect to the discrimination and retaliation claims.

Turano's motions to strike certain of plaintiff's answers to defendants statement of facts and a portion of Walls' affidavit are DENIED.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: September 30, 2002